## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HSB GROUP, INC.,
      Plaintiff,

    v.

SVB UNDERWRITING, LTD.,
      Defendant.

No. 3:04cv2127 (SRU)

## RULING ON MOTION *IN LIMINE*

      HSB Group, Inc. has sued SVB Underwriting, Ltd. to recover damages HSB had to pay in connection with lawsuits arising out of a nursing home boiler explosion. At issue here is whether HSB's experts can testify about the circumstances leading to the explosion. For the reasons that follow, to the extent the experts' testimony relies on evidence not known to HSB as of December 1, 2000, that motion is granted. To the extent their testimony relies on evidence that was or should have been known to HSB on December 1, 2000, the motion is denied.

## I.      Background

      This is an insurance coverage dispute arising from a catastrophic explosion that occurred inside the boiler room of a Flint, Michigan nursing home on November 10, 1999. During 2001 and 2002, seventeen of the explosion's victims and the nursing home's property insurer sued HSB, alleging that HSB's November 1998 inspection of the boiler was negligent. In time, HSB looked to its professional liability insurers, including SVB, to cover the millions of dollars in damages, settlements, and defense costs resulting from the underlying lawsuits. SVB later denied coverage based on the prior knowledge exclusion in HSB's policy ("Exclusion M"). The exclusion applies to any "Claim or circumstances which could reasonably be expected to give rise to a Claim" known to HSB as of the inception date, December 1, 2000.

I granted partial summary judgment on September 30, 2009, and the case is now ready for trial on one issue: whether Exclusion M of the insurance policy applies. To answer that issue, the trier of fact must determine whether a reasonable professional, in possession of the facts known to HSB as of December 1, 2000, could have reasonably expected/anticipated the explosion to give rise to a claim.

## II.    Standard of Review

SVB seeks to exclude the expert testimony of two of the plaintiff's witnesses on the ground that that testimony is irrelevant. Rule 401 of the Federal Rules of Evidence states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. The relevancy standard is a liberal one, *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 587 (1993), particularly in the context of a bench trial. *See Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547, 552 (2d Cir. 1977) ("[I]t may be the more prudent course in a bench trial to admit into evidence [even] doubtfully admissible records, and testimony based on them . . . .").

Rule 702 of the Federal Rules of Evidence addresses expert testimony. The Rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts have an obligation to ensure that all scientific testimony is both reliable and "relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Wills v. Amerada Hess*

*Corp.*, 379 F.3d 32, 48 (2d Cir. 2004) (instructing that "the district court must consider both the reliability and relevance of the proffered testimony").

## III.    Discussion

SVB seeks to preclude the testimony of two of the plaintiff's expert witnesses: Mohammad A. Malek and G. Mark Tanner.  Malek was retained by HSB in 2006, and designated as its expert on the statutory requirements and rules governing HSB's jurisdictional inspection of the nursing home's boiler in November 1998.  He is expected to testify about the scope and quality of HSB's November 1998 inspection of the nursing home's boiler.  At trial he is expected to express the following opinions:

- The Michigan Boiler Rules, which were effective in 1998, covered all the requirements for safety inspection of the [nursing home's] cast iron boilers.

- Herbert Wathan, a special inspector with [HSB], performed the inspection of the boiler complying with the Michigan boiler law and rules.

- Mr. Wathan thoroughly inspected the boiler as required, applied his experience and best judgment, and recommended to the Michigan Boiler Division [that it] issue the certificate.

- The Pedestal supports are not included in the definition of the boiler.  The supports did not fall within the jurisdictional limit of the boiler.

- The owner was responsible for the operation, maintenance, and testing of the boiler including the low water cutoff as required by the Michigan boiler law and rules.

Joint Pretrial Mem. 7-8.  In short, Malek's testimony is designed to indicate that HSB's boiler inspection was not negligent.

Tanner, a professional engineer, was retained by HSB in 2002.  He has been designated as an expert on the likely causes and origins of the explosion.  At trial he is expected to state the following opinions:

- Based upon the information known to HSB on December 1, 2000, the likely cause and origin of the Clara Barton explosion was a natural gas explosion.

- On January 21, 2002, based upon the information known to HSB, the likely cause and origin of the Clara Barton explosion was natural gas.

- Plaintiffs' theory as to the cause of the Clara Barton explosion changed on January 26, 2004, by stating that all twelve sections of the boiler were leaking and had been for many years, which contributed to the corrosion of the boiler supports.

- No component of the boiler that was within the scope of the Michigan State Jurisdictional Inspection as of November 14, 1998, caused or contributed to the Clara Barton explosion.

*Id*. at 9-10.  The bulk of Tanner's testimony will thus also indicate that HSB was not negligent.

SVB argues that Malek and Tanner's testimony is irrelevant because it only goes to whether a claim against HSB was more likely to be meritorious, and whether a claim is meritorious has no bearing on whether a claim is likely to be brought.  That argument is unavailing, because surely circumstances meriting a lawsuit are more likely to give rise to litigation than circumstances not warranting a lawsuit.

More convincing is SVB's argument that Malek and Tanner's testimony is irrelevant because neither expert had formed his opinion, or shared it with HSB, prior to December 1, 2000.  That is significant because the relevant inquiry at trial is whether HSB should have known on that date that a claim was likely.  HSB argues that the opinions Malek and Tanner will express will track investigations HSB undertook before December 1, 2000.  Thus, HSB claims, although it may not have had the opinions of Malek and Tanner on December 1, HSB was in a position to reach the same conclusion as the experts.

Malek and Tanner's testimony is irrelevant to the extent that it relies on information other than what was known, or should have been known, to HSB on December 1, 2000.  To the extent that the experts rely on testimony that *was* known to HSB by that date, however, their testimony

may be probative of what HSB would have reasonably understood the cause of the accident to be, and whether they could reasonably have expected that accident to lead to a claim against it.

**IV.     Conclusion**

For the reasons stated above, the motion to preclude the expert testimony of Malek and Tanner is GRANTED in part and DENIED in part.  Malek and Tanner are not precluded to the extent their testimony relies on evidence that was or should have been known to HSB on December 1, 2000.  They may not testify about matters not known to HSB at that time.

It is so ordered.

Dated at Bridgeport, Connecticut this 20th day of December 2010.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge